# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| NATURAL POLYMER INTERNATIONAL CORPORATION | § § § |
| | § Civil Action No. 4:16-CV-00359 |
| v. | § Judge Mazzant |
| | § |
| FEDEX FREIGHT, INC. | § § |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Natural Polymer International Corporation's Motion for Summary Judgment (Dkt. #19) and Defendant FedEx Freight, Inc.'s Motion for Summary Judgment (Dkt. #20). After reviewing the relevant pleadings and motions, the Court finds Plaintiff's motion should be granted and Defendant's motion should be denied.

## BACKGROUND

Natural Polymer International Corporation ("Polymer") manufactures pet products in Plano, Texas. In 2014, Polymer ordered six machines from AZCO Corporation ("AZCO"), an equipment manufacturer in Fairfield, New Jersey. After a failed attempt to ship the machines with another carrier, AZCO used FedEx Freight Inc. ("FedEx") as the carrier under Polymer's FedEx Freight account number. In July 2015, FedEx arrived at AZCO's facility to load and ship the machines. The machines had a total value of $81,796.[1] The machines were destroyed during transit to Polymer's Plano facility.

At the time of shipping, AZCO presented the FedEx driver with its standard bill of lading ("BOL"). A BOL is a contract between a shipper and a carrier. Like any contract, it conveys the parties' information, the subject matter, and the contract price. Here, the BOL contains a

---

[1] FedEx has already paid $30,000 of this amount. Although Polymer claims $81,796 in its complaint, it only asserts $48,966 in its motion for summary judgment.

provision that states that the BOL is "subject to the classifications and lawfully filed tariffs in effect on the date of issue of this Bill of Lading" and that "all or any of said property that any service to be performed hereunder shall be subject to . . . the applicable motor carrier classification or tariff" (Dkt. #23, Exhibit 1). Further, the BOL states that the "[s]hipper hereby certifies that he is familiar with all the terms . . . set forth in the classifications or tariff" and those terms are "hereby agreed to by the shipper and accepted for himself and his assigns" (Dkt. #23, Exhibit 1). FedEx maintains a "FedEx 100-M Rules Tariff" ("Rules Tariff") on its website.

The Rules Tariff was published and in effect throughout the transaction. A tariff outlines the terms and conditions that govern shipment. For example, a tariff may proscribe restrictions on certain cargo such as alcoholic beverages or firearms, or promulgate limitations on legal action such as a choice of law provision. Here, the relevant tariff provision establishes a liability limitation (Dkt. #23, Exhibit 1). Per Rule 420 of the Rules Tariff, FedEx asserts its liability is limited to $30,000.

It is undisputed that the parties are subject to the BOL and that the Rules Tariff, if applicable, limits FedEx's liability. However, the dispute involves the connection between the two documents. FedEx contends that the BOL, by reference to "lawfully filed tariffs," incorporated its Rules Tariff, thus limiting its liability. Polymer, by contrast, asserts that the tariff reference is insufficient to limit FedEx's liability under 49 U.S.C. § 14706 (the "Carmack Amendment"). Therefore, Polymer seeks the full amount of damages.

On April 18, 2016, Polymer filed suit in state court under the Carmack Amendment alleging $81,796 in damages for the destroyed equipment (Dkt. #3). On May 27, 2016, FedEx

removed the case to federal court and asserted that its liability is limited to $30,000 under the BOL and other related documents (Dkt. #1; Dkt. #5).

On January 26, 2017, Polymer filed its Motion for Summary Judgment (Dkt. #19). On March 1, 2017, FedEx filed a response (Dkt. #24). On March 8, 2017, Polymer filed a reply (Dkt. #25). On March 15, 2017, FedEx filed a surreply (Dkt. #27).

Also on January 26, 2017, FedEx filed its Motion for Summary Judgment (Dkt. #20). On March 1, 2017, Polymer filed a response (Dkt. #23). On March 8, 2017, FedEx filed a reply (Dkt. #26).

## LEGAL STANDARD

Summary Judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The moving party bears the initial burden of identifying the basis for its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). If the moving party satisfies its burden, the nonmovant must present affirmative evidence showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 257; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs will not suffice to carry this burden. The Court must consider all of the evidence in the light most

favorable to the nonmovant, with all reasonable inferences from the evidence made in favor of the nonmovant. *Nola Spice*, 783 F.3d at 536. However, the Court must "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

FedEx agrees that the Carmack Amendment applies to this dispute and that it is liable to Polymer. FedEx argues, however, that it limited its liability under the Carmack Amendment's liability limitation provision.

Under the Carmack Amendment a carrier may limit its liability "to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation." 49 U.S.C. § 14706(a), (c); *Excel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015); *Certain Underwriters at Interest at Lloyds of London v. UPS*, 762 F.3d 332, 335 (3d Cir. 2014); *ABB Inc. v. CSX Transp., Inc.*, 721 F.3d 135, 141 (4th Cir. 2013). The leading case interpreting this provision is *Hughes v. United Van Lines*, 829 F.2d 1407 (7th Cir. 1987). Under *Hughes*, a carrier must show that it (1) maintained a tariff with the Interstate Commerce Commission (now the Surface Transportation Board); (2) that it gave the shipper a reasonable opportunity to choose between two or more levels of liability; (3) that it obtained the shipper's agreement as to its choice of liability; and (4) that it issued a receipt or BOL before moving the shipment. *Hughes*, 829 F.3d at 1416. Following the enactment of the Trucking Industry Regulatory Reform Act of 1994 and the Interstate Commerce Commission Termination Act of 1995, the first part of the *Hughes* test is no longer applicable. *Nipponkoa Ins. Co. v. Atlas Van Lines, Inc.*, 687 F.3d 780, 782 (7th Cir. 2012). However, the carrier must provide to the

shipper, "on request of the shipper, a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based." 49 U.S.C. § 14706(c)(1)(B).

The limited liability subsection is a very narrow exception to the general rule of full liability. *Excel*, 807 F.3d at 150. It is the carrier's burden to prove that the parties had a written agreement to limit the carrier's liability. *ABB*, 721 F.3d at 145. The risk of error falls on the carrier. *Id.*

Polymer does not dispute the first or fourth elements. Instead, Polymer focuses on the second and third elements, specifically whether Polymer incorporated FedEx's Rules Tariff into the BOL. The Court finds that Polymer did not incorporate FedEx's Rules Tariff into the BOL and thus FedEx did not obtain Polymer's agreement to limit FedEx's liability.

A BOL is construed using contract principles. *Mich. Cent. R.R. Co. v. Mark Owen & Co.*, 256 U.S. 427, 430 (1921). When construing a contract, the primary goal is to determine the parties' intent as expressed in the terms of the contract. *Chrysler Ins. Co. v. Greenspoint Dodge of Hous., Inc.*, 297 S.W.3d 248, 252 (Tex. 2009). The first step a court must take is to determine if the contract is unambiguous. Whether a contract is unambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). A contract is ambiguous when it is subject to two or more reasonable interpretations. *Columbia Gas*, 940 S.W.2d at 589 (citing *Glover v. Nat'l Ins. Underwriters*, 545 S.W2d 755, 761 (Tex. 1977)). When a contract is unambiguous, the court determines the parties' intent from the terms of the written contract, without reference to parol evidence. *David J. Sacks, P.C.*, 266 S.W.3d

at 450. When a contract is ambiguous, the meaning of the terms is a question of fact. *Id.* However, when there is no dispute as to the circumstances, the construction is still a matter of law for the court. *In re Hite*, 700 S.W.2d 713, 718 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.) (citing *Brown v. Payne*, 176 S.W.2d 306, 308 (Tex. 1943)). Here, the dispute centers on whether Polymer, through its agent AZCO, incorporated the FedEx Rules Tariff .

Unsigned documents may be incorporated into and become part of a contract if the contract "plainly refers" to the unsigned document. *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (per curiam); *Owen v. Hendricks*, 433 S.W.2d 164, 167 (Tex. 1968). Incorporation by reference requires more than merely mentioning the document. *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.) (citation omitted). The language in the signed document must show the parties intended for the unsigned document to become part of the agreement. *Id.*; *see also One Beacon Ins. Co. v. Crowley Marine Serves., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011) (citing 11 Williston on Contracts § 30:25 (4th ed. 1999) ("[I]n order to uphold the validity of terms incorporated by reference, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.")).

FedEx argues that the BOL incorporated the Rules Tariff and therefore incorporated the limitation on liability. FedEx argues that the BOL should be interpreted against Polymer because Polymer's agent, AZCO, drafted the BOL. FedEx argues that AZCO, as an agent for the shipper Polymer, declared in writing that the Rules Tariff would govern this shipment when it referenced "lawfully filed tariffs in effect on the date of issue of this Bill of Lading." FedEx argues that the Eleventh Circuit deviated from *Hughes* when it considered the fact that the shipper, rather than the carrier, drafted the BOL. *Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268 (11th Cir. 2001).

FedEx argues that *Siren* created a bright-line rule that when a shipper drafts the BOL, the shipper is charged with constructive knowledge of any limitations contained in the documents that are incorporated into the BOL because "court[s] do not deem it proper or necessary to protect shippers from themselves" (Dkt. #20 at p. 20). FedEx argues that *Siren* is analogous to the present case because a sophisticated shipper, who was familiar with FedEx, drafted the BOL.

Polymer distinguishes *Siren* and argues that even if AZCO had authority to act on Polymer's behalf in completing the shipment, AZCO's outdated, generic reference to a tariff does not constitute a meaningful choice in limitation of liability by the shipper. Polymer also argues that FedEx did not meet its burden to show an agreement to limit liability between the shipper and carrier.

The Court finds that Polymer did not include the Rules Tariff because the use of an antiquated reference to a sixty-seven page document did not "plainly refer" to Rule 420 therein.

First, *Siren* is distinguishable. In *Siren*, the shipper drafted a BOL that contained very little information. 249 F.3d at 1269. However, the shipper indicated twice that the commodities would travel under "Class 85." *Id.* "Class 85" was understood throughout the trucking industry to mean that the carrier's liability would be limited to $11.87 per pound, regardless of any further limitation provided by a carrier. *Id.* at 1269 n.2. The shipper received, and knew it received, a discount from the full freight rate and knew that the carrier would use "Class 85" to determine the rate. *Id.* The shipper never asked for the carrier's tariff. *Id.*

The Eleventh Circuit held that the issue of whether the BOL incorporated the carrier's tariff was irrelevant. *Id.* at 1270–71. Rather, the Eleventh Circuit held that the shipper and carrier were only required to agree in writing to a reasonable value, above which the carrier would not be liable. *Id.* at 1271. Although the Eleventh Circuit did rely in part on the shipper drafting the

BOL, the court emphasized that its decision was based on the fact that the limitation was clear on the face of the BOL. *See id.* at 1269–70. The Eleventh Circuit did not find it necessary to hold that the tariff was incorporated into the BOL. *Id.* at 1274 n.5. The Eleventh Circuit ultimately reasoned that an experienced party that wrote the BOL to include terms generally known in the industry to limit liability, and who received a discount for including such terms, should be charged with knowledge of the effect of those terms. *Id.* at 1273.

The Court disagrees with FedEx in its claim that *Siren* created a bright-line rule because the Eleventh Circuit in *Siren* considered many factors besides the fact that the shipper drafted the BOL. *Id.* at 1274. Of utmost importance was the use of "Class 85." Because the parties here did not use a term similar to "Class 85," this case is distinguishable from *Siren*.[2]

Here, the shipper drafted the BOL, which stated:

> RECEIVED, subject to the classifications and lawfully filed tariffs in effect on the date of issue of this Bill of Lading . . . any service to be performed hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth . . . in the applicable motor carrier classification or tariff.

(Dkt. #23, Exhibit 1). Later, the rate authority box where the shipper could declare the value of property was left blank.

In *Siren*, the reference to "Class 85" was well-known throughout the industry to give a maximum amount of liability and the shipper received a discount for including this in their BOLs. *Siren*, 249 F.3d at 1269. Here, the reference to a purported liability limitation is outdated and generic. It refers to pre-1995 law that required carriers to file their tariffs with the Interstate Commerce Commission. This was eliminated by the ICC Termination Act of 1995. ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803 (1995); *Nipponkoa Ins. Co. v. Atlas Van Lines, Inc.*, 687 F.3d 780, 782 (7th Cir. 2012). Despite this, the purported reference to a

---

[2] Additionally, the Eleventh Circuit did not rely on the shipper incorporating the carrier's BOL. *Id.* at 1274 n.5.

8

tariff does not point to any identifiable rate or tariff created by the parties or known in the industry.

The facts here are similar to those in *ABB*. In *ABB*, the BOL stated that the product value was $1,384,000, but it did not include a price for the shipment or indicate the level of liability assumed by the carrier. 721 F.3d at 140. The space labeled "rate authority" was left blank. *Id.* Finally, the BOL stated that "every service to be performed hereunder shall be subject to all the terms and conditions the Uniform Domestic Straight Bill of Lading set forth . . . in Uniform Freight Classification in effect on the date hereof." *Id.* The carrier argued that this reference incorporated its "Price List 4605," a privately held list that provides a price that the shipper must use to negotiate a rate directly with the carrier. *Id.* at 141, 143. However, the shipper had never shipped cargo under Price List 4605. *Id.* at 143. The Fourth Circuit rejected the carrier's argument and held that the Carmack Amendment imposed full liability because the BOL did not reference an identifiable classification, rate authority code, price list, or any other indication that the carrier assumed only limited liability. *Id.* at 142–43. Similarly, here, there is no reference to an identifiable classification, code, list, or other indication of a limitation on liability; the "rate authority" box is blank; and Polymer had never shipped with FedEx Freight or under the Rules Tariff.

Further, the fact that the tariff in this case is available online rather than a private list as in *ABB* is not dispositive. The Fifth Circuit has not found that a shipper agreed to limit liability on the basis of constructive knowledge alone. *See, e.g., Hoskins v. Belkins Van Lines*, 343 F.3d 769, 778–79 (5th Cir. 2003) (holding that the shipper clearly agreed to limited liability because she was handed the carrier's "Interstate Order for Service" and changed the level of liability on the day of shipping). While Polymer could have found the Rules Tariff, Polymer has shown that it

did not read the Rules Tariff and did not take any actions indicating that it knew about one or more levels of liability.

Neither Polymer, nor AZCO, had previously done business with FedEx Freight. The BOL was not the result of any negotiations; it was presented to FedEx for the first time when the shipment was loaded into the truck. Finally, there is no evidence that the rate was any different than it would be for a different liability level. Therefore, FedEx has not shown that the shipper had knowledge of or chose a limitation on liability. Without such knowledge, the Court finds that Polymer did not incorporate the Rules Tariff into the BOL. *One Beacon Ins. Co. v. Crowley Marine Serves., Inc.*, 648 F.3d at 268 267 (5th Cir. 2011) (quoting 11 Williston on Contracts § 30:25 (4th ed. 1999)).

Under certain circumstances, FedEx would be able to rely on the shipper's generic reference. For instance, if FedEx and the shipper actively negotiated a contract or FedEx had knowledge that the shipper knew of FedEx's tariff, then FedEx would be able to prove mutual assent. Similarly, if FedEx had many prior dealings with a shipper, it would be able to prove that the shipper had knowledge of and assented to its terms. This is not one of those situations.

FedEx also argues that when the shipper drafts a BOL, the shipper's choice of liability should control, and any ambiguity should be construed against the shipper. The Court disagrees. The Carmack Amendment unambiguously imposes the risk of error on one particular party, the carrier, to the exclusion of the other party, the shipper. *See* 49 U.S.C. § 14706(c); *ABB*, 721 F.3d at 145. Thus, the general contract principle that any ambiguity should be construed against the drafter has been preempted by the Carmack Amendment.

Polymer has shown, as a matter of law, that the BOL's vague, antiquated reference to a sixty-seven page document did not "plainly refer" to Rule 420 of the Rules Tariff. Thus, FedEx

has not met its burden to establish the limitation of liability provision in the Carmack Amendment and is therefore liable for the full amount of damages.

## CONCLUSION

It is therefore **ORDERED** that Natural Polymer International Corporation's Motion for Summary Judgment (Dkt. #19) is hereby **GRANTED**.

The Court finds FedEx failed to properly limit its liability under the Carmack Amendment. As a result, FedEx is liable for the full amount of damages.

It is further **ORDERED** that FedEx Freight, Inc.'s Motion for Summary Judgment (Dkt. #20) is hereby **DENIED**.

It is further **ORDERED** that Plaintiff Natural Polymer International Corporation file a proposed final judgment within five (5) days of this order.

**SIGNED this 17th day of August, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE